**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **AKIIKI ("AKI") HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO:** |
| **v.** | ) | **CV-20** |
| | ) | **JURY DEMAND** |
| **ULTA SALON COSMETICS and** | ) | |
| **FRAGRANCE, INC. a/k/a ULTA, INC.** | ) | |
| **and/or ULTA BEAUTY,** | ) | |
| **Defendant.** | ) | |

# <u>COMPLAINT</u>

## I.    <u>JURISDICTION</u>

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and   the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981.   The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 §2000e *et seq.* and 42 U.S.C. §1981 providing for injunctive and other relief against race discrimination in employment.

2.    The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§1331, 1343(4); 28 U.S.C. §§2201 and 2202; and 42 U.S.C. 2000e-5(f)(3).

3.    Plaintiff has fulfilled all conditions precedent to the institution of this action under 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981.    Plaintiff timely filed his EEOC Charge of Discrimination within 180 days of occurrence of the last discriminatory act.   Plaintiff timely filed his claim of race discrimination within 90

1

days of the receipt of his Notice of Right-to-Sue letter from the Equal Employment Opportunity

Commission.

4.      The unlawful employment practices alleged herein below were committed by

Defendant within the State of Georgia.   Venue is proper in this Court pursuant to 28 U.S.C.

§1391(b) and 42 U.S.C. §2000e-5(g).

## II.     PARTIES

5.      Plaintiff, Akiiki ("Aki") Hill, is an African-American male citizen of the United

States and a resident of Stone Mountain, Georgia.   Plaintiff was employed by Defendant at one of

its stores located in Dunwoody, Georgia.

6.      Defendant, ULTA Salon Cosmetics and Fragrance, Inc. a/k/a ULTA, Inc. and/or

ULTA Beauty (hereinafter "Defendant" or "Ulta"), is a Corporation doing business in Georgia,

and is an entity subject to suit under 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.   Defendant

employs at least fifteen (15) persons.

7.      ULTA is the premier beauty destination for cosmetics, fragrance, skin, hair care

products and salon services.

## III.    CAUSES OF ACTION

8.      Plaintiff realleges and incorporates by reference paragraphs 1-7 with the same force

and effect as if fully set out in specific detail hereinbelow.

9.      Plaintiff has been discriminated against because of his race, African-American, in

job/work assignments, evaluations/appraisals, termination and other adverse terms and conditions

of employment.

10.     Plaintiff was hired by the Defendant in February 2011 as a Salon Manager at Store

39 in Atlanta, Georgia.   As a Salon Manager, Plaintiff was responsible for managing the salon in the store, which included managing and developing personnel driving sales, and ensuring customer satisfaction of all salon services.   Plaintiff performed his job duties and responsibilities as a Salon Manager in a satisfactory manner.

11.   In 2013, Plaintiff began working on Defendant's Design/Artistic Team.   This team is usually comprised of UTLA employees, generally hair designers, who step away from their everyday roles to help ULTA with various trade shows, photo shoots, fashion week, and marketing events.   More specifically, an Artistic Team Designer is responsible for creation and execution of creative and public relations initiatives and are also responsible for creating and delivering current trends to the organization services teams as well as representing ULTA at public industry events.

12.   Plaintiff continued to work as a Salon Manager - managing a Salon team - and working outside of his Store on the Design/Artistic Team.   During this time, Plaintiff managed his dual roles and exceeded his goals, despite ongoing issues with his management team. Specifically, Plaintiff diligently and faithfully performed his job duties and responsibilities and achieved position business results throughout his seven year tenure with Defendant.   Plaintiff consistently exceeded his performance objectives in both his roles as Salon Manager and a member of the Artistic Team.

13.   In describing Plaintiff's work at ULTA, Jennifer McGann, Director of Artistic Development and Training noted on November 4, 2016 in a "Services Organizational Announcement" to Retail and Salon Operations:

> "In 2015, Aki transferred to store 1151 where in continued his leadership as a Salon Manager and was recognized for leading salon comp sales at 158%.   During his time as a Salon Manager, Aki positioned himself as a leader and resource for his district and helped grow business in his area.   Aki is passionate about salon professional development and servicing his community.   Aki has been a

3

committed, passionate and successful member of the Artistic Team since its inception in 2013.   In this role, Aki has been instrumental in representing Ulta Beauty from a creative perspective.   He has continually demonstrated outstanding creative ability as well as strong public representation for Ulta Beauty.   Aki has been a leader within the team helping to drive forward the vision and mission for Ulta Beauty.   Aki goes above and beyond what is expected of him and has acted as a leader with the team."

14.    Despite Plaintiff's work performance in his dual roles, he experienced discrimination and pressure to choose between the two roles.   Plaintiff made complaints to management regarding his perceived discriminatory treatment.   As a result, on or about September 26, 2016, ULTA moved Plaintiff to a full-time member of the Design Team as the Artistic Team Designer.   Plaintiff moved into this position effective October 23, 2016.   Said position came with a pay raise.

15.    In this new role as Artistic Team Designer, Plaintiff was responsible for helping lead the Design Team and Team development, as well as handling various logistics, such as, scheduling, photo shoots, supplies, and ensuring that the right people were staffed for the right events.   At the time Plaintiff moved full-time to the Design Team, he was the sole full-time member.

16.    On October 10, 2016, Defendant hired Nick Stenson, Caucasian, as Chief Artistic Creative Director.   Stenson was responsible for continuing to build ULTA's salon business, including further building and managing the Design Team, as well a managing ULTA's Education Team.

17.    During January 2017, Stenson hired a second full-time Artistic Team Designer, Sean Brezann, Caucasian.   Brezanin became a peer to Plaintiff.

18.    Plaintiff's working conditions; however, worsened after the hiring of Nick Stenson

4

and Sean Brezanin.   Specifically, Plaintiff complained to management about the discriminatory treatment he was experiencing, including, but not limited to, the following:

(a)    being excluded from key meetings, promotional materials, and otherwise withheld pertinent information from him;

(b)    shifted many of Plaintiff's core job duties to his newly hired Caucasian counterpart - Sean Brezanin;

(c)    held Plaintiff to different standards, work rules and expectations;

(d)    failed to adequately support Plaintiff, including being completely unresponsive to his repeated requests and attempts to engage his manager;

(e)    subjected Plaintiff to racially insensitive comments;

(f)    assigned Plaintiff menial and degrading tasks; and

(g)    otherwise treated Plaintiff differently than his Caucasian counterpart.

19.    Defendant's discriminatory treatment of Plaintiff continued throughout 2017. Again, Defendant was giving Plaintiff's counterpart the sole responsibilities of the Artistic Team Designer position.   Brezanin was given the sole responsibility and directives concerning projects from Nick Stenson.   This allowed Brezanin to gain experience for his later promotion at the expense of Plaintiff and ultimately Plaintiff's termination.   Plaintiff would have to train Brezanin and provide guidance to him so that Brezanin appeared to be the leader of the two.   Plaintiff's workload was being decreased and he was being made to take a supportive role even though he and Brezanin were peers and held the same job/performed the same job duties and responsibilities.

20.    In January of 2018, Plaintiff was evaluated by Nick Stenson and received his only poor review during his entire tenure with Defendant.   This review painted the plaintiff as an underperforming employee, thereby giving the Defendant a reason to "downsize," "eliminate" Plaintiff's position and terminate him a mere two months later.

21.    During this time, January 2018, Nick Stenson's position changed within the company from Chief Artistic Creative Director to Vice President, which gave him more authority and power as a decision-maker.   In turn, Stenson determined that Sean Brazanin would be promoted to a Manager's position and Plaintiff would be terminated.

22.    Plaintiff was terminated on March 22, 2018.   Plaintiff was given the reason of downsizing as the reason for his termination.   However, Caucasians were promoted and/or hired into the department within several weeks of Plaintiff's termination.   Specifically, Sean Brazanin was promoted to a Manager's position; and Gabriella Blackburn and Samantha Manuzac were hired.

23.    When Plaintiff was terminated, he inquired about other positions within the Defendant in lieu of termination.   However, Plaintiff was told there were no other positions available.   On information and belief, Plaintiff believes there were other positions available that he could have filled instead of being terminated.

24.    Defendant's proffered reasons for Plaintiff's discriminatory treatment were pretext for race discrimination.

25.    Plaintiff has suffered severe emotional distress, embarrassment and humiliation as a result of the discrimination and Defendant's conduct.

26.    Defendant's actions were willful, with malice and with reckless disregard for Plaintiff's rights.

27.    Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, an injunctive and declaratory judgment is his only means of securing adequate relief. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful

policies and practices as set forth herein unless enjoined by this Court.

## IV.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by 42 U.S.C. §2000e *et seq*. and 42 U.S.C. §1981.

2.    Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

3.    Enter an order requiring Defendant to make Plaintiff whole by awarding him reinstatement/the position and pay he would have had occupied in the absence of race discrimination, back-pay (plus interest), front-pay, punitive, compensatory damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4.    Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

<div style="margin-left:50%">

Respectfully submitted,

<u>/s/ William Gregory Dobson, Esq.</u>
William Gregory Dobson, Esq.
Georgia Bar No. 237770
LOBER & DOBSON, LLC
P.O. Box 887
LaFayette, Georgia 30728
Telephone: (478) 745-7700
Facsimile: (478) 745-4888
wgd@lddlawyers.com

</div>

<u>/s/ A. Danielle McBride, Esq.</u>
A. Danielle McBride, Esq.
LOBER & DOBSON, LLC
830 Mulberry Street, Suite 201
Macon, Georgia 31201
Telephone:     (478) 745-7700
Facsimile:     (478) 745-4888
admcbride@lddlawyers.com

OF COUNSEL:

Gregory O. Wiggins (*pro hac vice* to be filed)
WIGGINS, CHILDS, PANTAZIS,
        FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (fax)

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL TRIABLE ISSUES.

<u>/s/ William Gregory Dobson, Esq.</u>
OF COUNSEL

**<u>DEFENDANT'S ADDRESS:</u>**

Ulta Salon Cosmetics & Fragrance, Inc. a/k/a Ulta, Inc. and/or Ulta Beauty
c/o Prentice Hall Corporate Services, Registered Agent
40 Technology Parkway South, Suite 300
Norcross, Georgia 30092